UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RICHARD VACCARIELLO, on behalf of
himself and all others similarly situated,

                        Plaintiffs,                **REPORT AND**
                                                    **RECOMMENDATION**
    -against-
                                                     08 Civ. 5336 (CS) (GAY)

XM SATELLITE RADIO INC.,

                        Defendant.
---------------------------------------------------------------X

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

      Plaintiff, Richard Vaccariello ("plaintiff" or "Vaccariello"), brought this action against defendant, XM Satellite Radio Inc. ("defendant" or "XM"), alleging that XM violated New York GEN. BUS. LAW § 349 ("GBL § 349") and was unjustly enriched through its practice of automatically renewing customers' subscriptions. Plaintiff also seeks injunctive relief mandating XM comply with the notice provisions of New York GEN. OBLIG. LAW § 5-903 ("GOL § 5-903"). Pursuant to Fed. R. Civ. P. 23 ("Rule 23"), Vaccariello seeks to certify a class consisting of, "all residents of the State of New York who subscribed to XM Satellite radio service and have had their service plan automatically renewed at any time since June 11, 2005." For the reasons set forth below, I respectfully recommend denial of plaintiff's motion for class certification.

## I. BACKGROUND

    A. <u>XM's Business Practices</u>

    XM is a publically traded company that provides subscription based satellite radio

1

services. (Am. Compl. ¶ 8; Dreyer Decl. Ex. H at ¶ 2[1]). Approximately 600,000 New Yorkers subscribe to XM's service. (Def.'s Mem. in Opp'n to Pl.'s Mot. for Class Certification at 1[2]). Defendant's service is available through XM compatible automobiles and radios as well as over the internet. (Dreyer Decl. Ex. H at ¶ 2). Customers subscribe to XM via the internet, phone, and mail. (Def.'s Mem. at 6). XM offers subscribers a variety of service plans. (Id.). These plans include monthly, quarterly, yearly and multi-year subscription options. (Id.). All of XM's plans require the subscriber to pre-pay the cost of their subscription. (Id. at 1; Mem. of Law in Support of Pl.'s Mot. for Class Certification at 5[3]).

When a subscription expires, XM automatically renews the customer's service for an identical term. (Id. at 5-6; Def.'s Mem. at 1, 6-7). By way of example, at the end of a three year subscription a customer's service automatically renews for another three years. XM disclosed its automatic renewal policy to subscribers. (Reply Mem. of Law in Further Support of Pl.'s Mot. for Class Certification at 18-19[4]; Def.'s Mem. at 7-14). However, the breadth and adequacy of these disclosures are in dispute. (Id.; Pl.'s Mem at 36-37). See also (Pl.'s Reply Mem. at 18-19);(Def.'s Mem. at 25).

B. Plaintiff's XM Account

In January, 2004 Vaccariello leased a General Motors ("GM") Cadillac Escalade with a pre-installed XM radio. (Dreyer Decl. Ex. H at ¶ 5). On or about January 21, 2004

---

[1]Citations to Declarations refers to the declarations submitted with this motion

[2]Hereinafter Def.'s Mem.

[3]Hereinafter Pl.'s Mem.

[4]Hereinafter, Pl.'s Reply Mem.

plaintiff began a free three month trial of XM radio. (Id. at ¶ 10). At the end of the trial period, April 2004, Vaccariello purchased a one year XM subscription. (Id. at ¶¶ 17-18).

In early April 2005, plaintiff called XM's Listener Care Center and purchased an additional three year subscription. (Id. at ¶ 44). At approximately the same time that he renewed his subscription, Vaccariello activated an XM online account. (Id. at ¶ 33). The XM online account allowed Vaccariello to listen to satellite radio over the internet. (Id.). Activation of this online account required plaintiff to click on a check box indicating that he read and accepted XM's terms and conditions of service. (Id. at ¶ 34; Pl.'s Mem. at 11). XM's terms and conditions stated, in part, that, "the term of this Agreement is indefinite and Services will continue until canceled." (Lochhaas Decl. Ex. X at 00681).

In early February 2008, several months prior to the end of his subscription, plaintiff returned his leased vehicle. (Dreyer Decl. Ex. H at ¶ 58). After turning in his vehicle and prior to actual renewal, XM alleges plaintiff was sent a letter advising him that his subscription was set to renew for an additional three years. (Def.'s Mem. at 17-18). In early April 2008, Vaccariello's subscription was in fact renewed. (Dreyer Decl. Ex. H at ¶ 60). Accordingly, plaintiff received an invoice for an additional three year subscription. (Id.).

Plaintiff failed to pay the April invoice and on or about May 9, 2008 received a past due notice. (Id. at ¶ 61). On that same day Vaccariello called XM and cancelled his subscription. (Id. at ¶ 64; Pl.'s Mem. at 12). After cancelling his subscription, XM sent plaintiff a pro-rated bill for the cost of satellite services rendered between automatic renewal and cancellation. (Dreyer Decl. Ex. H. at ¶ 63). Ultimately, by check dated May 29, 2008 the plaintiff paid his outstanding XM balance. (Id. at ¶ 65).

C. Plaintiff's Complaint

Based on his interactions with XM, plaintiff commenced this action in his own name and on behalf of all other New York subscribers who had their service automatically renewed since June 11, 2005. (Am. Compl. at ¶ 1; Pl.'s Mem. at 1). In his complaint Vaccariello asserts three causes of action. First, plaintiff alleges that XM's automatic renewal policy was a deceptive trade practice in violation of GBL §349. (Am. Compl. at ¶ 34). This cause of action is premised, in part, on the theory that nonconformity with GOL §5-903 constitutes a per se violation of GBL §349. (Pl.'s Mem. at 3, 22). Alternatively, Vaccariello argues that XM violated GBL §349 by inadequately disclosing the requirement that subscribers affirmatively cancel their satellite service. (Id. at 3, 35). Second, Vaccariello alleges that XM was unjustly enriched by its collection of fees from subscribers whose service was automatically renewed. (Am. Compl. at ¶ 37). Third, plaintiff seeks an injunction compelling XM to conform with the notice provisions of GOL § 5-903. (Id. at ¶ 41).

## II. DISCUSSION

A. Legal Standard

Motions for class certification are governed by Federal Rule of Civil Procedure 23. See Fed. R. Civ. P. 23. Rule 23(a) has four familiar requirements: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222 (2nd Cir. 2008); Pelman v. McDonald's Corp., No. 02 Civ. 07821, 2010 WL 4261390, at *5 (S.D.N.Y. Oct. 27, 2010). In addition to satisfying these four criteria, the moving party must demonstrate that the class is maintainable under one of Rule 23(b)'s three subsections. McLaughlin, 522 F.3d at 222; Brown v.

4

Kelly, 609 F.3d 467, 476 (2d Cir. 2010).

In this case, plaintiff seeks to certify a class pursuant to Rule 23(b)(2) and (3). Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In re Visa Check/Mastermoney Anti-Trust Litig. ("In re Visa Check"), 280 F.3d 124, 133 (2d Cir. 2001), *overruled on other grounds by* In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 471 F.3d 24 (2d Cir. 2006); Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) certification requires a finding that "[t]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action [mechanism] is superior to other available methods for fair and efficiently adjudicating the controversy." In re Visa Check, 280 F.3d at 133; Fed. R. Civ. P. 23(b)(3).

Courts must conduct a rigorous analysis of the moving party's compliance with Rule 23. In re IPO, 471 F.3d at 33 n.3. Therefore, certification is only proper once the movant establishes each of the applicable requirements by a preponderance of the evidence. Brown, 609 F.3d at 476; In re Flag Telecom Holdings, Ltd. Securities Litig. ("In re Flag Telecom"), 574 F.3d 29, 35 (2d Cir. 2009); In re IPO, 471 F.3d at 41. In determining whether the moving party carried its burden, courts must resolve material factual disputes notwithstanding their overlap with merits issues. Brown, 609 F.3d at 476; Weiner v. Snapple Beverage Corp., No. 07 Civ. 8742, 2010 WL 3119452, at * 4 (S.D.N.Y. Aug. 5, 2010). Additionally, courts need not assess compliance with Rule 23(a) when the movant cannot satisfy Rule 23(b)'s requirements. See McLaughlin, 522

F.3d at 222; Pelman, 2010 WL 4261390, at *6; Weiner, 2010 WL 3119452, at *5. As such, this Court's analysis is confined to Rule 23(b)(2) and (3).

B. Fed. R. Civ. P. 23(b)(2)

Plaintiff cannot certify a Rule 23(b)(2) injunctive class because he lacks Article III standing. See U.S. CONST. art. III, § 2. The jurisdiction of federal courts are circumscribed to actual "cases" and "controversies." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P. ("W.R. Huff"), 549 F.3d 100, 106 (2d Cir. 2008). See U.S. CONST. art. III, § 2. One element of the "case" and "controversy" requirement is standing. Raines v. Byrd, 521 U.S. 811, 818 (1997); W.R. Huff, 549 F.3d at 106. Article III standing requires: "(1) *injury-in-fact*, which is a concrete and particularized harm to a legally protected interest; (2) *causation* in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." W.R. Huff, 549 F.3d at 106-7; See also Friends of the Earth Inc. v. Laidlaw Envtl. Services, 528 U.S. 167, 180-1 (2000); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp. ("Mid-Hudson"), 418 F.3d 168,174 (2d Cir. 2005).

The three irreducible elements of standing apply to each claim and form of relief sought. Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003). See also Friends of the Earth Inc., 528 U.S. at 185. Plaintiff's standing as to each claim and form of relief is measured at the time the action is commenced. Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.5 (1992); Comer v. Cisneros, 37 F.3d 775, 791 (2d Cir. 1994); Fenstermaker v. Obama, No. 07-2980-cv, 2009 WL 3601990, at *2 n.1 (2d Cir. Nov. 3, 2009). Where, as in this case, the Court's jurisdiction is premised on diversity of citizenship, the plaintiff

must have standing under both Article III and the applicable state law. Mid-Hudson, 418 F.3d at 173. See (Am. Compl. at ¶2); 28 U.S.C. 1332(d). These core standing requirements are in no way diminished by the fact that the plaintiff filed a class action suit. Denny v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006). Thus, if the named plaintiff lacks standing the "entire class action fails." Dickerson v. Feldman, 426 F.Supp.2d 130, 134 (S.D.N.Y. 2006). See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d. Cir. 2007); Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d. Cir. 2005).

To satisfy standing's injury-in-fact requirement a plaintiff seeking injunctive relief must demonstrate: (1) a "likelihood of future harm"; and (2) "the existence of an official policy or its equivalent." Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004). See White v. First Am. Registry, 230 F.R.D. 365, 367 (S.D.N.Y. 2005). As courts have explained, in actions for injunctive relief past injuries cannot satisfy the injury-in-fact requirement. Shain, 356 F.3d at 215; Deshawn E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).

In this case, XM had an official policy of automatically renewing customer's subscriptions. However, Vaccariello cannot demonstrate that he faced a likelihood of future harm from XM's renewal policy. When this action was commenced, the time for testing plaintiff's standing, Vaccariello was no longer an XM customer. See (Pl.'s Mem. at 12) (plaintiff no longer an XM customer as of May 9, 2008); (Id. at 14) (initial complaint filed on June 11, 2008); (Mackiel Reply Decl. Ex. I at 94) (plaintiff subscribed to Sirius in January 2010). In the absence of a satellite subscription, plaintiff did not face a realistic possibility of future harm from XM's renewal policy at the time he filed the

7

complaint.

Vaccariello's knowledge of XM's practices further vitiates the likelihood of future harm. The crux of plaintiff's complaint is that XM's customers unwittingly pay extra fees because they are unaware that their service automatically renews. As a result of his billing dispute with defendant, Vaccariello is now clearly aware of XM's billing practices. Given this knowledge, plaintiff is not likely to unwittingly face automatic renewal and its accompanying fees. Accordingly, there is insufficient evidence that Vaccariello is likely to suffer future harm from XM's policies. See Laster v. T-Mobile USA Inc., No. 05cv1167, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009)(plaintiffs could not prove injury-in-fact and thus, lacked standing for injunctive relief when they were aware of defendant's deceptive practice). Plaintiff's multifaceted inability to demonstrate standing's injury-in-fact requirement is fatal to his motion for class certification under Rule 23(b)(2).

This Court has considered and ultimately concludes that plaintiff's arguments in favor of standing are unpersuasive. Vaccariello's reliance on McNair v. Synapse Group Inc., No. 06-5072, 2009 WL 3754183 (D.N.J. Nov. 5, 2009), is misplaced. In McNair the District Court held that plaintiffs, who were no longer defendant's customers, had standing to seek an injunction. Id. at *4. In reaching this conclusion the Court found that the plaintiffs faced a likelihood of future harm from defendant, Synapse's, deceptive renewal practices. Id. Crucial to the Court's determination was the fact that Synapse was not clearly identified in its widely disseminated offers. Id. Thus, in the future plaintiffs were likely to unwittingly become defendant's customers and fall prey to Synapse's deceptive practices. Id. The District Judge also rejected the argument that

plaintiffs were unlikely to face future harm because they were already aware of Synapse's deceptive conduct. Id. The Court reasoned that since defendant's conduct constantly evolved, prior knowledge of Synapse's practices would not innoculate consumers from the challenged deception. Id.

Crucial factual differences distinguish McNair from the case at bar. Different from Synapse, XM is not a secret force purveying satellite radio. As such, it is unlikely that a subscriber who canceled their service will unwittingly purchase an XM radio in the future. Therefore, one of the key rationales underlying the McNair decision is inapposite. McNair is also distinguishable on the grounds that XM's allegedly deceptive practices have remained constant over time. Thus, after experiencing automatic renewal a subscriber is unlikely to be deceived by the practice in the next billing cycle. Given these factual distinctions, McNair does not cure Vaccariello's lack of standing.

Cassese v. Washington Mut. Inc., 255 F.R.D. 89 (E.D.N.Y. 2008), like McNair, is readily distinguishable from the case at bar. In Cassese the Court did not address the named plaintiffs' standing. Cassese, 255 F.R.D. at 97. To the extent that standing was addressed, the Court focused on the propriety of certification where members of the proposed class had already paid disputed charges. Id. Thus, Cassese does not alleviate the injury-in-fact defect in plaintiff's standing.

Plaintiff's reliance on Jermyn v. Best Buy Stores, 256 F.R.D. 418 (S.D.N.Y. 2009), is also unpersuasive. In Jermyn, plaintiff sought an injunction preventing defendant, Best Buy, from either: "(1) advertising and promoting a price match guarantee or (2) enforcing its undisclosed Anti-Price Matching Policy." Id. at 433. At the time the plaintiff in Jermyn commenced his action there was a reasonable probability

that he would purchase additional merchandise from Best Buy. Since Best Buy's Anti-Price Matching Policy applied to the sale of all merchandise, plaintiff faced a reasonable prospect of future harm from the policy. Unlike Best Buy's policy, by its terms XM's renewal practice only effects and injures current customers. At the time Vaccariello filed his complaint he was no longer an XM customer. Therefore, unlike the plaintiff in Jermyn, Vaccariello was incapable of suffering injury from XM's policies at the time his suit was filed. Jermyn is also distinguishable because the District Court's Rule 23(b)(2) analysis never addressed the named plaintiff's standing. Id. at 433-34. Based on these factual differences Jermyn does not support Vaccariello's standing.

Finally, GBL § 349(h)'s injunction provision cannot cure plaintiff's standing defect. In a diversity case, such as this, the plaintiff must possess Article III and statutory standing. See Mid-Hudson, 418 F.3d at 173. As was outlined above plaintiff lacks Article III standing and accordingly, GBL § 349(h) cannot cure this jurisdictional defect. Since the plaintiff lacked Article III standing at the time this action was commenced, I respectfully recommend that plaintiff's request to certify a Rule 23(b)(2) class be denied.

C. Fed. R. Civ. P. 23(b)(3)

For the reasons set forth below plaintiff's GBL § 349 and unjust enrichment claims are not susceptible to class certification under Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Brown, 609 F.3d at 476. Predominance is established when, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." Id. at 483 (internal quotations and citations

10

omitted). In assessing predominance courts consider whether the elements of each cause of action are susceptible to common, class wide proof. Weiner, 2010 WL 3119452, at *5 (citing In re Visa Check, 280 F.3d at 136); In re Currency Conversion Fee Antitrust Litig. ("In re Currency Conversion"), 230 F.R.D. 303, 309-10 (S.D.N.Y. 2004); Pelman, 2010 WL 4261390, at *6. Failure to establish that the elements of each cause of action are subject to class wide proof is sufficient grounds for denying class certification. Id.; In re Currency Conversion, 230 F.R.D. at 309-10.

The applicability of individualized defenses to particular class members is another factor courts consider in adjudicating the predominance requirement. McLaughlin, 522 F.3d at 233; Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 226 F.R.D. 446, 454 (S.D.N.Y. 2005). See also In re Visa Check, 280 F.3d at 138 (the existence of defenses, though not controlling, is a factor considered in the predominance analysis). Likewise, difficulties in calculating damages factor into the predominance analysis. McLaughlin, 522 F.3d at 231; Charron v. Pinnacle Group N.Y. L.L.C., 269 F.R.D. 221, 239-40 (S.D.N.Y. 2010); Weiner, 2010 WL 3119452, at *6 n.13. However, neither the existence of individual defenses nor difficulties in calculating damages in and of themselves defeat the predominance requirement. McLaughlin, 522 F.3d at 233.

(1) GBL § 349

Plaintiffs alleging a violation of GBL § 349's prohibition against deceptive acts and practices must prove: "(1) the [challenged] act was consumer oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). The injury prong

requires that plaintiff suffer an actual injury, though not necessarily pecuniary harm. Stutman v. Chemical Bank, 731 N.E.2d 608, 612 (N.Y. 2000). However, the mere fact that a plaintiff was deceived by the defendant does not constitute actual injury. Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 599 (N.Y. App. Div. 1998). That is to say that deception is not a cognizable injury under GBL § 349.

Vaccariello's attempt to certify a class fails, in part, because he cannot prove the injury element of his GBL § 349 on a class wide basis. Brissenden v. Time Warner Cable of New York City, 885 N.Y.S.2d 879 (N.Y. Sup. Ct. 2009), is illustrative of why the injury element of plaintiff's claim is not susceptible to class wide proof. In Brissenden, plaintiff filed a class action under New York State law alleging that Time Warner was engaged in deceptive business practices that violated GBL § 349. Id. at 882. The crux of the complaint was that Time Warner, a cable provider, inadequately disclosed that customers were not required to rent cable converter boxes or remote controllers. Id. at 882-83. In denying plaintiff's class certification motion, the Court concluded that those customers who actually wanted the optional equipment were not injured by Time Warner's deficient disclosures. Id. at 885. Thus, class certification was denied because determining which customers were actually injured necessitated individual inquiries that would predominate over common questions. Id. at 884-86.

Vaccariello, like the plaintiff in Brissenden, faces an insurmountable challenge of proving class wide injury through common proof. Similar to Time Warner's customers, a portion of XM's 600,000 New York customers may have wanted their service automatically renewed. Like those Time Warner customers who wanted the optional equipment, XM subscribers who wished to have their service automatically renewed did

not suffer a cognizable GBL § 349 injury. Accordingly, even if XM's disclosures were deficient, customers who desired automatic renewal are not entitled to relief under GBL § 349. Ascertaining which customers actually wanted renewal requires a myriad of individual inquiries that would predominate over any common questions. Plaintiff's inability to prove class wide injury through common evidence is, alone, grounds for denying Rule 23(b)(3) certification based on a lack of predominance. See In re Currency Conversion, 230 F.R.D. at 309-10.

XM's individual defenses against proposed class members further hampers plaintiff's ability to satisfy Rule 23(b)(3). These specific defenses include the voluntary payment doctrine as well as the existence of full or partial refunds. In a GBL § 349 claim the voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts." Solomon v. Bell Atlantic Corp., 9 A.D.3d 49, 55 (N.Y. App. Div. 2004); Newman v. RCN Telecom Services Inc., 238 F.R.D. 57, 78 (S.D.N.Y. 2006)(same). Accordingly, any class member who knew of XM's automatic renewal policy and continued to pay for their service is barred from recovering their subscription fees. Thus, individual inquiries are necessary to determine which class members knew of XM's policies but, nevertheless continued to renew their services.

XM's ability to assert a defense based on the existence of credits and refunds also raises individual issues. Under New York law, a plaintiff who has received billing credits as compensation for defendant's allegedly deceptive practices is prohibited from asserting a GBL § 349 claim. Solomon, 9 A.D.3d at 55. As the record in this case indicates, a number of proposed class members may have received billing credits from XM. See (Hagemann Decl. at ¶12); (Coleman Decl. Ex. A at 0426541). Determining

which proposed class members received credits raises additional individual issues. Accordingly, the inability to prove the injury element of GBL § 349 through common evidence coupled with the existence of individual defenses vitiates plaintiff's ability to satisfy Rule 23(b)(3)'s predominance requirement.

Vaccariello's reliance on Jermyn, Dupler v. Costco Wholesale Corp., 249 F.R.D. 29 (E.D.N.Y. 2008), and GOL § 5-903 does not salvage the lack of predominance in this case. Plaintiff's inability to prove damages on a class wide basis distinguishes this case from Jermyn and Dupler. In both cases the plaintiffs and proposed classes suffered clearly identifiable injury. In Jermyn, consumers paid 15% restocking fees and were denied promised monetary incentives as a result of Best Buy's Anti-Price Disclosure Policy. Jermyn, 256 F.R.D. at 427-28. In Dupler consumers paid for year long memberships and in return received benefits that lasted less than a year. Dupler, 249 F.R.D. at 34. In the case at bar, not all of the class members suffered a clearly identifiable injury because there were subscribers who wanted automatic renewal. Based on this distinction Jermyn and Dupler do not obviate the deficiencies in plaintiff's class certification motion.

Additionally, plaintiff's reliance on GOL § 5-903 does not overcome the lack of predominance. Vaccariello, throughout his motion papers, argues that defendant's noncompliance with GOL § 5-903 raises common questions that predominate over individual issues. However, by its plain language GOL § 5-903 simply provides consumers with a defense against automatically renewing contracts. See New York GEN. OBLIG. LAW § 5-903 ("Automatic renewal provision of contract for service... *unenforceable* by contractor unless notice thereof given to recipient of

service.")(emphasis added). The statute does not, as plaintiff implies, create mandatory obligations that can serve as the predicate for a causes of action. Plaintiff has failed to cite a single case where noncompliance with GOL § 5-903's disclosure requirements constituted an independent cause of action or was held to violate GBL § 349. In fact New York courts have affirmatively held that GOL § 5-903 does not create an independent cause of action. See Ovitz v. Bloomberg L.P., 909 N.Y.S.2d 710, 711-12 (N.Y. App. Div. 2010), *leave to appeal granted*, 16 N.Y.3d 705 (N.Y. 2011). Since noncompliance with GOL § 5-903 cannot serve as the predicate for a cause of action, XM's "violation" of the statute is irrelevant to the predominance analysis. Based on the foregoing reasons, I respectfully recommend denial of plaintiff's motion to certify a class for his GBL § 349 claim.

  (2) Unjust Enrichment

In New York a plaintiff suing on the theory of unjust enrichment must prove: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d. Cir 2009)(citation omitted). The Second Circuit has explained that: "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield ("Beth Israel"), 448 F.3d 573, 586 (2d Cir. 2006)(quotations and citations omitted) Therefore, an unjust enrichment claim will not lie where there is a valid and enforceable contract covering the disputed subject matter. Id. at 587 (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-389 (N.Y. 1987)); Goldman v. Metropolitan Life Insurance Co., 5 N.Y.3d 561, 572 (N.Y. 2005).

Plaintiff's attempt to certify a class as to his unjust enrichment claim fails, in part, because the elements of the cause of action are not susceptible to class wide proof. Specifically plaintiff cannot prove through common evidence that equity and good conscience require restitution. An "indispensable ingredient" of the equity and good conscience requirement is the existence of "an injustice as between the two parties involved." In re Jetblue Airways Corp. Privacy Litig., 379 F.Supp.2d 299, 330 (E.D.N.Y. 2005). In this case, plaintiff cannot demonstrate through class wide evidence that it was unjust for XM to collect fees from all of the customers whose service was renewed. For example, XM may have collected fees from customers who wanted automatic renewal. It was not unjust to collect compensation for the provision of these requested services. Likewise, defendant did not reap an improper benefit from subscribers who initially complained about automatic renewal but, ultimately continued to listen to XM. Defendant was clearly entitled to collect fees from those who, despite their complaints, continued to listen to satellite radio.

Accordingly, individual inquiries are necessary to determine which proposed class members wanted automatic renewal and/or continued to listen to satellite radio after renewal, as these subscribers cannot recover for unjust enrichment. Such individualized inquiries vitiate Vaccariello's ability to prove the elements of unjust enrichment on a class wide basis. See Dugan v. Academy at Ivy Ridge, 249 F.R.D. 413, 427 (N.D.N.Y. 2008)(lack of predominance when individual inquiries are necessary to determine whether equity and good conscience require restitution). Plaintiff's inability to prove the elements of his claim through common evidence, in and of itself, defeats Rule 23(b)(3)'s predominance requirement.

Moreover, plaintiff cannot prove through common evidence that members of the proposed class are entitled to recover damages under the theory of unjust enrichment. Unjust enrichment claims only lie in the absence of a binding agreement between the parties. See Beth Israel, 448 F.3d at 586-87. In this case, a plethora of proposed class members entered into "Clickwrap"[5] agreements with XM. See (Lochhaas Decl. at ¶ ¶ 9,13)(identifying various times XM customers may have entered "clickwrap" agreements). "Clickwrap" agreements are one of the primary ways that parties enter into binding contracts over the internet. Hines, 668 F.Supp.2d at 366. See also Specht v. Netscape Commc'ns Corp., 150 F.Supp.2d 585, 594 (S.D.N.Y. 2001)(courts who have considered "clickwrap" agreements have held them to be valid and enforceable).

The "clickwrap" agreements in this case required subscribers to accept XM's customer agreement prior to receiving satellite radio service. See (Lochhaas Decl. at ¶ 9). One of the terms in every customer agreement informed subscribers, in some form, that their service was continuous. See e.g., (Lochhaas Decl. Ex. J at 08822). Therefore, a number of XM customers entered a valid contract that addressed the disputed matter in this case, automatic renewal. Accordingly, subscribers who accepted the "clickwrap" agreement cannot recover under the unjust enrichment claim. See Beth Israel, 448 F.3d at 586-87. Determining which of XM's 600,000 New York customers accepted the "clickwrap" agreements and thus, are barred from recovery necessitates individual inquiries. These individual inquiries would predominate over common questions. Since

---

[5] "Clickwrap" agreements generally entail a website user clicking an "I accept" box after being presented with terms and conditions. See Hines v. Overstock.com, Inc., 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009); TradeComet.com L.L.C. v. Google, Inc., 693 F.Supp.2d 370, 377 n.4 (S.D.N.Y. 2010).

plaintiff cannot prove, through common evidence, the elements of unjust enrichment or that class members are entitled to relief under this claim, I respectfully recommend the denial of class certification.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for class certification be denied in its entirety.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated:   April _____, 2011             Respectfully Submitted:
         White Plains, New York

Dated:   April ____, 2011                     Respectfully Submitted:
         White Plains, New York

                                              _____
                                              GEORGE A. YANTHIS, U.S.M.J.